# Beatrice F. Niles *v.* Richard B. Niles
## (4462)

Dupont, C. J., Borden and Daly, Js.

Argued September 15—decision released December 9, 1986

*George J. Bradford,* with whom was *Maria T. Tomasky,* for the appellant-appellee (plaintiff).

*Eileen M. Ellsworth,* for the appellee-appellant (defendant).

DUPONT, C. J. The plaintiff wife appeals and the defendant husband cross appeals from the judgment of the trial court incident to a suit for dissolution of marriage, awarding the defendant the sum of $68,361.65 from the proceeds of the sale of the marital property. The plaintiff alleges that the trial court erred: (1) in failing to enforce properly the provisions of the parties' stipulation incorporated into the decree of dissolution; (2) in refusing to consider, in determining the division of proceeds of the sale of the marital home, the wife's payments of mortgage, repair and maintenance expenses; (3) in refusing to consider, in determining the division of those proceeds, the alleged fraud of the defendant in the completion of his financial affidavit; and (4) in disregarding the husband's alleged wilful refusal to convey title to the plaintiff in reaching an equitable distribution of the sale proceeds. In his cross appeal, the defendant claims that the trial court erred (1) in failing to hold the plaintiff in contempt for her failure to give the defendant his share of the sale proceeds, and (2) in permitting certain deductions from the sale proceeds for costs incurred by the plaintiff for fix-up expenses, attorney's fees, real estate taxes and recording fees.

The trial court found that upon the dissolution of the marriage of the plaintiff and the defendant on September 25, 1979, an oral stipulation regarding the division

of the proceeds of the sale of the marital home was incorporated into the decree.[1] The stipulation required, in part, that the defendant immediately deed his interest in the marital property to the plaintiff.[2] It also provided that if the property was sold within three years after the dissolution, the plaintiff would pay the defendant one half of the net proceeds of the sale in excess of $235,000. In the event that the property was not sold within three years, the stipulation provided that the parties would try to agree upon an appraiser to appraise the value of the property, and the defendant would receive one half of the appraised value in excess of $235,000. If an appraiser could not be agreed upon, the stipulation provided that the court would provide one. Finally, the stipulation provided that the plaintiff could deduct from the defendant's portion reasonable costs incurred for fix-up expenses, a brokerage commission and legal fees in connection with the sale.

---

[1] The oral stipulation provided:

"Now, it's contemplated that you [the plaintiff] are going to sell the house, and if you sell the house within three years from date, you are to pay your husband one half of the net proceeds of the sale above two hundred and thirty-five thousand dollars, and the proceeds of the sale are computed by taking the gross selling price less reasonable fixing up expenses, attorney's fees in connection with the sale, the brokerage fees if any, and then whatever that figure is, if it's more than two hundred and thirty-five thousand dollars, you have to pay it to your husband one half of it at the closing.

"Should you elect not to sell the house within three years from date then the parties, that is you and your husband, will try to agree upon an appraiser to appraise the house as to its value at that time. If you can't agree upon the appraiser, the Court would appoint one, and that appraiser would appraise the property that you're getting from your husband now. Whatever that appraisal is, we would deduct from it a brokerage commission, and reasonable fees in connection with the sale—that is legal fees, and that would be the basis upon which you would apply the formula of giving him one half above two hundred and thirty-five thousand."

[2] The stipulation also provided: "[Y]our husband is to forthwith execute a deed to you of that property so that it's owned by you free and clear of everything except the first mortgage, which is to be your responsibility from now on."

The defendant failed to transfer the title of the marital property to the plaintiff. The plaintiff filed several contempt motions between November 19, 1979, and April 16, 1984, seeking the transfer of the title by the defendant as required by the stipulation and dissolution decree. These motions were never acted upon by the court, because the plaintiff presumably allowed them to be marked "off" the calendar.[3] The title of the property was ultimately transferred to the plaintiff pursuant to a court order in August, 1984. The plaintiff claims to have obtained an appraisal of the house from an appraiser dated April 15, 1983, in the amount of $205,000.[4] The property was sold in February, 1985, by the plaintiff for $397,000. The plaintiff refused to pay the defendant any portion of such sum. The defendant filed a motion for contempt, seeking a share of the proceeds, plus interest and reasonable attorney's fees.

After a hearing on the defendant's motion, the trial court concluded that the defendant's portion of the proceeds would be determined by using the gross sale price and deducting from this amount the sum of $235,000 plus reasonable fix-up expenses and closing costs incurred for the real estate commission, attorney's fees, real estate taxes and recording fees.[5] The trial court also denied the defendant's motion for contempt and for interest and attorney's fees.

[3] The plaintiff claims in her brief that she could not pursue the contempt motions because the defendant absented himself from the jurisdiction. The record does not indicate whether such was the case. In any event, the motions sought an order of the court for the transfer of title and the plaintiff could have obtained title by judicial act without the acquiescence or act of the defendant. General Statutes § 46b-81.

[4] The plaintiff claims that a copy of the appraisal report was sent to the defendant's counsel. The defendant, however, denies that such report was ever received, and claims to have had no knowledge of such appraisal. The appraisal report was never received into evidence in the trial court.

[5] In arriving at the amount of $68,361.65 to be awarded to the defendant, the trial court subtracted from the gross sale price of $397,000 the costs of sale, which were computed to be $26,276.70. The amount of $235,000 was subtracted from this amount, and the remainder was divided by two.

## I

The plaintiff's first claim of error involves the trial court's use of the gross sale price instead of the appraisal value of the property alleged to have been obtained by her, in the computation of the defendant's interest in the property. The plaintiff alleges that the stipulation clearly provided that if the marital property was not sold within three years, the appraisal value was to be used to evaluate the defendant's interest. The plaintiff asserts that the trial court's use of the gross sale price constituted an impermissible modification of the stipulation.

The stipulation which was incorporated into the decree dissolving the marriage of the parties provided that if the plaintiff elected not to sell the house within three years, "the parties . . . will try to agree upon an appraiser to appraise the house as to its value at that time." If the parties could not "agree upon the appraiser, the Court would appoint one, and that appraiser would appraise the property . . . ."

The defendant moved to open the judgment as to the conveyance of the marital realty. This motion was denied on June 4, 1981.[6] The plaintiff's failure to obtain title to the realty by judicial decree thereafter, and up to September 25, 1982, can be considered her "election not to sell the house within three years . . . ."

The plaintiff, however, did not adhere to the procedure provided for in the stipulation, but rather elected unilaterally to select an appraiser and obtain an appraisal without the consent of the defendant. The property had already been sold by the time the trial court made its determination, and strict compliance

---

[6] The defendant claimed that the stipulation relating to the conveyance of the marital home was entered by mutual mistake regarding the federal capital gains tax consequences of such conveyance.

with the language of the stipulation was no longer possible. The purpose of a real estate appraisal is to obtain the fair market value of realty. That purpose is even more accurately obtained by the actual sale price of the realty. Since the need for an appraisal to establish fair market value was no longer present once the property had been sold, the trial court did not err in effectuating the intent of the parties in their stipulation by concluding that the "fair and true value" of the property was the actual sale price.

The trial court enjoys wide discretion in making determinations in dissolution cases. See *Pasquariello* v. *Pasquariello,* 168 Conn. 579, 362 A.2d 835 (1975). This court has recognized that " ' "[t]he well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts." ' *McPhee* v. *McPhee,* 186 Conn. 167, 177, 440 A.2d 274 (1982)." *Jetmore* v. *Jetmore,* 6 Conn. App. 632, 634, 507 A.2d 116 (1986). Moreover, in determining the reasonableness of the trial court's rulings, this court has noted that "every reasonable presumption should be given in favor of the correctness of its action." Id., 635, quoting *Leo* v. *Leo,* 197 Conn. 1, 4, 495 A.2d 704 (1985); see also *Kinney* v. *Kinney,* 5 Conn. App. 484, 485, 500 A.2d 569 (1985). We conclude that the trial court's interpretation of the stipulation did not constitute an abuse of discretion, but rather was a reasonable resolution of the controversy.

The plaintiff's argument that the trial court's decision resulted in an impermissible modification of the terms of the stipulation lacks merit. Although it is well recognized that the terms of stipulated judgments cannot be enlarged or lessened by the court, a different situation is posed here. In this case, noncompliance on the part of the parties made strict adherence to the

terms of the stipulation impossible. In such a situation, we have recognized that the trial court," 'in the exercise of its equitable powers, necessarily [has] the authority to fashion whatever orders [are] required to protect the integrity of the original consent judgment.' *Connecticut Pharmaceutical Assn., Inc.* v. *Milano,* [191 Conn. 555, 563–64, 468 A.2d 1230 (1983)]." *Lee* v. *Tufveson,* 6 Conn. App. 301, 303, 505 A.2d 18, cert. denied, 199 Conn. 806, 508 A.2d 31 (1986). We conclude that, in this case, the trial court did not modify the terms of the stipulation, but rather fashioned an appropriate remedy to protect the integrity of the stipulation and the interest of the parties.

The plaintiff also claims that the trial court's use of the gross sale price in its determination of the parties' interests in the proceeds of sale resulted in an unconscionable benefit to the defendant which arose from the appreciated value of the realty. Both the plaintiff and the defendant, however, benefited from that appreciation. Moreover, the plaintiff was able to, and ultimately did, seek the transfer of the title via court order. Although the plaintiff did file contempt motions against the defendant, she did not actually force the transfer of title until almost five years after the rendition of the dissolution judgment.

The defendant's failure to agree to the plaintiff's appraisal did not result in an unconscionable benefit to the defendant, even assuming that her appraisal may properly be considered by this court.[7] The defendant was under no obligation to agree to the plaintiff's unilateral appraisal of the property. The stipulation provided that if the property was not sold after three years, the parties would try to agree on an appraiser to conduct the appraisal of the property, and if the parties could not agree on one, the court would appoint

[7] See footnote 4, supra.

one. The plaintiff, however, chose not to follow this procedure, but rather obtained her own appraiser and appraisal. The plaintiff could have, but chose not to, seek the appointment of an appraiser by the court as the stipulation provided.

Contrary to the plaintiff's claims, the trial court's use of the gross sale price was not unconscionable, but rather constituted an equitable distribution of the proceeds of the sale of the marital property pursuant to the general intent of the parties as evinced in the stipulation, in view of the fact that the strict terms of the stipulation could no longer be effectuated.

## II

Both the plaintiff and the defendant claim that the trial court erred in its computation of the amount that should have been subtracted from the gross sale price before determining the division of the proceeds. The plaintiff asserts that her payments of mortgage, maintenance and carrying expenses for the five years preceding the sale should have been subtracted from the sale price.[8] She alleges that she incurred those expenses only because of the defendant's breach of the stipulation and use of dilatory tactics in failing to convey title to the property to the plaintiff. The trial court found that such expenses were never intended by the parties to be charged to the defendant, and that the delay in the transfer of title could not alter this finding.

The trial court's conclusion is supported by ample evidence contained in the record and, as such, did not constitute an abuse of discretion. The record reflects that the parties agreed to the subtraction from the sale proceeds of reasonable fix-up expenses made in anticipa-

---

[8] In its memorandum, the trial court noted that the plaintiff claimed that the total amount of such expenses sought to be deducted from the gross sale price was approximately $130,000.

tion of a sale, and other costs incurred in connection with the sale. The trial court properly concluded that it could not deduct expenses which were never intended by the parties to be deductible, because that would constitute an impermissible modification of the stipulation. See *Croke* v. *Croke,* 4 Conn. App. 663, 665, 496 A.2d 235 (1985). The stipulation provided that the mortgage on the premises was to be the sole responsibility of the plaintiff after the date of the judgment of dissolution of marriage. It was not error, therefore, for the trial court to refuse to allow the plaintiff to deduct mortgage payments.

The plaintiff submitted bills for fix-up expenses in the amount of $2000.[9] The trial court disallowed $1000 of them as being too remote in time to qualify as deductible fix-up expenses made in anticipation of the sale. The defendant alleges in his cross appeal that the record does not support the trial court's conclusion that the remaining $1000 was deductible as a "fair figure for 'fix-up expenses' incident to a sale." In order for this court to review the defendant's claim, the record must be sufficient for review. See *Perrotti* v. *Massa,* 183 Conn. 16, 438 A.2d 806 (1981). It is impossible to determine the basis of the trial court's decision from the present record. The trial court did not make specific findings in its memorandum of decision regarding the specific bills or time frame it considered in reaching its decision.[10] Moreover, the record does not contain any of the bills or canceled checks in question.

[9] The arguments of the defendant relating to the claimed error of the trial court in allowing deductions from the gross sale price for fix-up expenses, legal fees, recording fees and conveyance taxes are raised in the defendant's cross appeal but are discussed in the text above since these claims, as well as the plaintiff's claims that certain other deductions should have been allowed, are interrelated.

[10] The trial court's memorandum of decision provides: "The agreement also provided that 'reasonable fix-up expenses' could also be deducted from the gross sale price. The plaintiff submitted various bills in the amount of

The transcript of the hearing on the defendant's motion for contempt indicates that the plaintiff attempted to introduce various bills, receipts and canceled checks into evidence. Such items, however, were objected to by the defendant on the basis that they were unrelated to fix-up expenses incident to the sale because they predated the year of the sale. The trial court failed to rule on the defendant's objection. It is unclear from the record whether such items were actually received into evidence. The present record, however, is devoid of any such evidence. Although both the plaintiff and the defendant refer in their briefs to the bills and checks submitted into evidence, and the trial court's memorandum of decision refers to such bills, the record that has been presented to this court does not contain the evidence cited to and relied upon by the parties or the trial court.

The burden of ensuring that a record is sufficient for review falls upon the party bringing the claim on appeal. *Urban* v. *Leggio,* 1 Conn. App. 226, 227, 470 A.2d 1226 (1984). Moreover, gaps or ambiguities in the record are generally held against that party for failing to take the steps necessary to cure such defects. This includes the proper utilization of the motion for articulation pursuant to Practice Book § 3082 (now § 4051). *Carpenter* v. *Carpenter,* 188 Conn. 736, 739 n.2, 453 A.2d 1151 (1982); *In re Juvenile Appeal (85–1),* 3 Conn. App. 158, 161, 485 A.2d 1355 (1985). Because the defendant is contesting the trial court's ruling in his cross appeal, he bears the burden of presenting this court with a proper record. He has not done so. The inadequacy of the record effectively prevents appellate review of the defendant's claim.

$2000, but some of the charges date back two or three years before the sale, and hence cannot be categorized as 'fix-up expenses' incident to a sale, and we think that $1000 is a fair figure for 'fix-up expenses,' resulting in a new sale price of $370,723.30."

The trial court also allowed $3000 as a deduction for legal fees. The defendant claims that there was no evidence from which the court could have concluded that the legal fees were reasonable. The failure to produce evidence as to the reasonableness of legal fees where there is an agreement to pay such fees, however, does not justify a trial court in refusing to award them, if the court can rely on its own knowledge in determining their value. *Guaranty Bank & Trust Co.* v. *Dowling,* 4 Conn. App. 376, 386, 494 A.2d 1216, cert. denied, 197 Conn. 808, 499 A.2d 58 (1985). In this case, the parties agreed that legal fees could be deducted from the sale proceeds and the court found that $3000 was a reasonable sum for legal fees in connection with this sale.

The defendant also claims that the court should not have deducted the cost of real estate conveyance taxes and recording fees since these expenses were not specifically mentioned in the stipulation of the parties. The court reasonably construed the stipulation as embracing normal closing costs. Standard closing costs such as an adjustment for real estate taxes, a conveyance tax and recording fees were properly deducted. The parties evinced an intent in their stipulation, by providing for the deduction of legal fees, fix-up expenses and brokerage commissions, to also allow deductions for "reasonable fees in connection with the sale" in arriving at the dollar amount of the net proceeds of sale. The trial court's allowance of these deductions was not an abuse of discretion.

### III

The plaintiff's third and fourth claims of error are similar, and we shall, therefore, consider them together. She claims that the trial court erred in refusing to consider the alleged fraud of the defendant in the completion of his financial affidavit and his misconduct in

refusing to obey the court's orders when it reached its conclusion regarding the distribution of the sales proceeds. The plaintiff alleges that the defendant in his financial affidavit fraudulently misrepresented the cash value of his retirement plan to be $92,000 less than its actual value. The trial court held that these allegations were not relevant to the hearing on the defendant's motion for contempt, but suggested to the plaintiff that she could later make a proper motion regarding the allegations of fraud. The plaintiff's attorney acknowledged at the hearing that he could make a motion to open the judgment on the issue of fraud.[11] The plaintiff claims that the trial court would not have made the original property assignment if the correct information had been provided by the defendant in his financial affidavit. The plaintiff also claims that the defendant's disregard of the court's order to transfer title to the property mandates equitable relief from this court.

Although this court has recognized the need for a full and fair disclosure of information contained in a financial affidavit; *Grayson* v. *Grayson,* 4 Conn. App. 275, 286, 494 A.2d 576 (1985); we have also noted that the extent of judicial intervention to ensure that justice is done where fraud has been perpetrated is necessarily

---

[11] At the hearing on the defendant's motion for contempt, the following colloquy took place:

"Mr. Bradford: Your Honor, [the defendant] has put on his financial affidavit that his benefits from RCA, his cash surrender or retirement system from RCA of $26,000.00. Within a couple of months he turns around and draws out $118,000.00. Now if that is not putting fraud on this court to the extent of $92,000.00, then I should not be practicing law. And we have that documented by RCA.

"The Court: Well, that's not necessary at this point. If you want to do something about that I think you can make a proper motion, but it doesn't really have anything to do with the sale.

"Mr. Bradford: Well, Your Honor, I think that we would, with the Court's permission ask to file a Motion to Reopen Judgment on this issue."

During oral argument in this court, the plaintiff's counsel stated that he had not made a motion to open the judgment on the ground of fraud, but that he was aware such a motion was still an available option.

limited. Id.; see also *Jucker* v. *Jucker,* 190 Conn. 674, 677, 461 A.2d 1387 (1983). An allegation of fraud is not always relevant to the particular proceedings at hand. The fraud, if proven, would have required opening the judgment on the stipulation because it is clear from this record that the stipulation was negotiated as a package. *Ehrenkranz* v. *Ehrenkranz,* 2 Conn. App. 416, 424, 479 A.2d 826 (1984). The defendant did not seek that remedy.

In this case, the alleged fraud had no relevance to the resolution of the controversy regarding the division of the proceeds realized from the sale of the marital property. The trial court's duty in the present case was limited to ruling on the defendant's motion to hold the plaintiff in contempt for failure to pay him his share of the sale proceeds, which necessitated an interpretation of the language contained in the stipulation of the parties. The allegations of fraud, therefore, should not have been considered by the trial court in reaching its determination. Rather, the proper recourse for the plaintiff to assert such allegations and purported injustice was to bring a motion to open the judgment. See *Trapp* v. *Trapp,* 6 Conn. App. 143, 146 n.4, 503 A.2d 1187 (1986); *Jackson* v. *Jackson,* 2 Conn. App. 179, 478 A.2d 1026, cert. denied, 194 Conn. 805, 478 A.2d 710 (1984).

The trial court did not fail to consider the defendant's alleged misconduct in not conveying the real estate to the plaintiff immediately after the date of dissolution. The court found that the defendant's failure to convey the realty had no impact on the expenses chargeable to him in accordance with the stipulation of the parties. Furthermore, the plaintiff does not dispute that she could have, at any time between September 25, 1979, and March 28, 1980, the date of the defendant's motion to open the judgment, or at any time after June 4, 1981, the date that the motion was

denied, sought the court's intervention to obtain title to the realty. The defendant's failure to abide by the judgment of the court was within the control of the plaintiff to cure. She did not choose to do so. The court did not err. It considered the lack of a conveyance by the defendant and deemed that lack of conveyance irrelevant to the issue before it.

## IV

In his cross appeal, the defendant claims that the trial court erred in failing to hold the plaintiff in contempt and in refusing to award him attorney's fees, costs and interest. The defendant asserts that the plaintiff's failure to share the proceeds of the sale with the defendant in accordance with the stipulation was in contempt of the dissolution decree. The trial court denied the defendant's motion because it found a bona fide dispute between the parties concerning the meaning and intent of the stipulation.

A finding of contempt necessarily depends upon the facts and circumstances presented. *Dukes* v. *Durante,* 192 Conn. 207, 228, 471 A.2d 1368 (1984). Our role in the review of the trial court in a judgment regarding civil contempt is extremely limited. In such cases, " 'our review is technically limited to "questions of jurisdiction, such as whether the court had authority to impose the judgment inflicted . . . ." ' *Papa* v. *New Haven Federation of Teachers,* 186 Conn. 725, 731, 444 A.2d 196 (1982), quoting *State* v. *Jackson,* 147 Conn. 167, 170, 158 A.2d 166 (1960)." *Hartford Federal Savings & Loan Assn.* v. *Tucker,* 192 Conn. 1, 3, 469 A.2d 778 (1984); *Marcil* v. *Marcil,* 4 Conn. App. 403, 405, 494 A.2d 620 (1985). For this reason, we have noted that "[t]he fact that [an] order had not been complied with fully . . . does not dictate that a finding of contempt must enter. It is within the sound discretion of the court

to deny a claim for contempt when there is an adequate factual basis to explain the failure to honor the court's order." *Marcil* v. *Marcil,* supra.

We find that there was no abuse of discretion here. The record indicates that the plaintiff's failure to share the proceeds of the sale of the marital property with the defendant was not wilful, but rather was a result of a mistaken belief that her appraisal value of the property should be used instead of the sale price in determining the parties' interest pursuant to the stipulation. Because the plaintiff's appraisal value was below the sum of $235,000, the plaintiff was under the mistaken perception that the defendant was not entitled to any portion of the sale proceeds. There was an adequate factual basis presented to explain the plaintiff's failure to share the proceeds of the sale with the defendant, and it was well within the trial court's discretion to deny the defendant's motion for contempt.

The decision to deny the defendant's request for attorney's fees, costs and interest was likewise within the broad discretion of the trial court. An abuse of discretion in the denial of such awards will only be found on appellate review if this court determines that the trial court could not reasonably have concluded as it did. *Jetmore* v. *Jetmore,* 6 Conn. App. 632, 637–38, 507 A.2d 116 (1986). The trial court did not act unreasonably on the basis of the evidence presented.

There is no error on the appeal.

There is no error on the cross appeal.

In this opinion the other judges concurred.