[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
On several days in April, May and June of 1995 this court heard evidence and argument on the defendant's motion (#206) and amended motion to open the judgment. The motion to open had been filed on June 23, 1994, less than three weeks after the marriage of the parties had been dissolved on June 3, 1994. On the latter date the parties had aborted the trial of their limited contested dissolution by entering into an agreement which the court found to be fair and equitable under all the circumstances and incorporated by reference into its decree CT Page 11082 dissolving their marriage, pursuant to § 46b-66 of the General Statutes.
In an earlier memorandum of decision this court limited the hearing on the defendant's motions to evidence of fraud, duress, accident or mistake which the defendant claimed would invalidate the stipulated judgment of the parties. See Memorandum of Decision dated March 22, 1995; Jenks v. Jenks, 34 Conn. App. 462,465 (1994), reversed on other grounds, 232 Conn. 750
(1995).
The defendant's fundamental claim is that the plaintiff committed fraud in certain financial disclosures or non-disclosures made by way of her financial affidavits. In considering this claim the court is mindful of the Supreme Court's emphasis on the need for "full and frank disclosure" in financial affidavits filed in dissolution matters. SeeBillington v. Billington, 220 Conn. 212, 219 (1991). Among other things, that principle of "full and frank disclosure" is "essential to [the court's] strong policy that the `private settlement of the financial affairs of estranged marital partners is a goal that courts should support rather than undermine.'" Id. at 221 (Citations omitted.)
"`Fraud consists in deception practiced in order to induce another to part with property or surrender some legal right, and which accomplishes the end design.'" Alexander v. Church,53 Conn. 561, 562, quoting T. Cooley Torts p. 474. The elements of a fraud action are: (1) a false representation was made as a statement of fact; (2) the statement was untrue and known to be so by its maker; (3) the statement was made with the intent of inducing reliance thereon; and (4) the other party relied on the statement to his detriment. Billington, supra, at 217.
After Billington's elimination of diligence in trying to discover and expose fraud as a limitation on the granting of relief from a marital judgment on that ground, there are three remaining limitations. There must have been no laches or unreasonable delay by the injured party after the fraud was discovered. There must be clear proof of the perjury or fraud. There must be a substantial likelihood that the result of a new trial will be different. Id. at 218. This court finds that there is no issue as to laches or unreasonable delay on the part of the defendant in this case. Therefore, the focus is on the remaining issues of the clarity of the proof of perjury or fraud CT Page 11083 and the substantial likelihood that the result of a new trial would be different.
The defendant claims fraud on the part of the plaintiff in two respects. First, he points to a discrepancy between her weekly wages as shown by exhibits introduced at the hearing and the weekly wages reported by her on various financial affidavits submitted while the case was pending. Second, he claims that the plaintiff failed to include on her financial affidavits an employee pension plan available to her through her employer.
With regard to the pension plan, there is no evidence whatever that the plan was in existence prior to October of 1994, four months after the judgment was entered in this matter. Evidence introduced by both the plaintiff and the defendant indicated that the stock account which comprised the plaintiff's employer's pension plan was not opened until October 6 or 7, 1994.
With regard to the plaintiff's wages, the defendant introduced evidence intended to show that the plaintiff's actual wages were higher than those reported on her financial affidavit. The two exhibits covered calendar year 1994, and, when the court inquired whether or not he intended to introduce evidence as to 1993, the defendant responded that he did not. His testimony, however, was that he relied on a financial affidavit executed by the plaintiff in October of 1993 in entering into the parties' separation agreement. The transcript of proceedings when the court found the parties' agreement to be fair and equitable demonstrates that the affidavits relied on by the court were also those filed by the parties in October of 1993. See p. 46 of defendant's Exhibit 2, the transcript of proceedings on June 3, 1994. Thus, the court has no evidence of plaintiff's actual wages at the time the financial affidavit relied upon by the defendant and the court was filed, and whether or not those wages differed from what she reported on that affidavit.
Even if the court were to assume that the plaintiff's actual wages in October 1993 were the same as they were in January of 1994, as indicated by defendant's Exhibits 1 and 3, the discrepancy would not be a material one, given the defendant's testimony as to the nature of his reliance on the plaintiff's earnings. The defendant testified that he agreed to pay, as child support, the principal and interest of the CT Page 11084 mortgage on the family home, as well as the real estate taxes, because he doubted whether the plaintiff could do so based on the figures on her October 1993 financial affidavit. That monthly payment of principal, interest and taxes was over $1,100 in 1993-1994. The additional money available to the plaintiff, if her wages in October 1993 were the same as they were in January 1994, would still not have been sufficient to allow her to pay the mortgage and taxes, as well as her other weekly expenses, and that would have been apparent to the defendant.[1]
The testimony at the hearing also raised substantial question in the court's mind as to whether the defendant relied at all on the plaintiff's financial affidavit of any date. There was considerable testimony as to the negotiations among the defendant, who is an attorney, counsel for the plaintiff and an attorney who the defendant had specifically requested to represent him during these negotiations. Based on the testimony of the latter two attorneys, whom the court found to be credible witnesses, there were many factors which prompted the defendant to agree to pay child support by way of the mortgage and real estate tax payments, which factors had nothing at all to do with the plaintiff's income. For example, the attorney who represented the defendant testified that the defendant wanted to remain a partial owner of the marital residence and to maintain the mortgage and tax payments because of an intention to reacquire the home for himself in the future. Plaintiff's counsel testified unequivocally that the negotiations concerning the defendant's payments of support were based not at all on a review of the financial affidavits and an application of child support guidelines. The issue, as he recalled it, was the defendant's insistence on not selling the family home or conveying his interest to the plaintiff. He was adamant, the attorney testified, that the family home should be maintained for his daughter.
Thus, there is a substantial question in the court's mind whether or not the financial information contained on the plaintiff's financial affidavit played any significant part in the defendant's negotiating position or in his final decision to enter into the agreement.
In any event, there was certainly nothing in the evidence received at this hearing which amounted to the "clear evidence" of fraud required by Billington. This court "decline[s] to adopt a rule that any misrepresentation in an affidavit, if it CT Page 11085 be one, automatically requires a finding of fraud on the court's part". See Grayson v. Grayson, 4 Conn. App. 275, 292 (1985). Rather, the court relies on the well settled law as to the requirements for proof of fraud:
 Fraud may not be presumed but must be strictly proven by "clear and satisfactory" evidence or "clear, precise and unequivocal evidence." Kilduff v. Adams, Inc., 219 Conn. 314, 328 . . . (1991); Alaimo v. Royer, 188 Conn. 36, 39 . . . (1982).
Masotti v. Bristol Savings Bank, 43 Conn. Sup. 360, 366 (1994).
The evidence adduced at the hearing on the defendant's motion to open and vacate the judgment in this case did not support his claim of fraud or any of the other possible grounds for opening a stipulated judgment.[2] Therefore, the defendant's motion to open and vacate the judgment is denied.
The defendant's motion to open the judgment and numerous other post-judgment motions spawned considerable litigation in 1994 and 1995, leading to a request by the plaintiff for counsel fees. That request was supported by an affidavit of her counsel on June 16, 1995. The defendant, an attorney, has represented himself throughout.
Based on the parties' financial affidavits of May 26, 1995 and the testimony heard on June 2, 1995, the court finds that the defendant's financial position is sufficiently superior to the plaintiff's as to justify an award of counsel fees. Such an award is also supported by the court's consideration of the factors referred to in § 46b-62 of the General Statutes. To minimize further post-judgment litigation and in recognition of the limits on defendant's financial resources, however, the court limits its award of counsel fees to in-court time expended by counsel in proceedings before this court from December 29, 1994 through June 2, 1994. Cf. Niles v. Niles (I), 9 Conn. App. 240,250 (1984).
The plaintiff's motion for counsel fees is granted, and the defendant is ordered to pay her the sum of $4,182.50 (23.9 hours at $175) by no later than December 1, 1995.
SHORTALL, J. CT Page 11086