[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: DEFENDANT'S MOTION TO REOPEN AND MODIFY JUDGMENT
The defendant has filed a revised motion to reopen and modify judgment in the above entitled matter. In her motion, the defendant alleges that the plaintiff filed an untruthful financial affidavit with the court on the date of dissolution, and that she relied on that affidavit when she agreed to the financial orders which were ordered by the court in that proceeding.
In the motion, the defendant requests that the court reopen the judgment of dissolution of marriage and vacate its prior financial orders due to the alleged fraud on the part of the plaintiff.
A contested hearing was held on this matter on January 22, 2001, at which both parties were represented by counsel. Both parties testified at that hearing. Upon completion of the hearing, counsel were given the opportunity to submit memoranda of fact and law. The court has carefully considered all of the evidence and testimony introduced at the hearing.
 Factual Findings
The marriage of the parties was dissolved at an uncontested dissolution hearing before the court (Solomon, J.) on July 8, 1999. Both parties were represented by counsel at that proceeding.
Records in the court file, of which this court takes judicial notice, indicate that the plaintiff and the defendant were married on July 25, 1987 and had two daughters, who were bomin 1989 and 1992.
At the dissolution hearing on July 8, 1999, the plaintiff and the defendant each submitted sworn financial affidavits to the court. CT Page 4682
The plaintiffs affidavit indicated that he was employed as plant equipment operator for the Northeast Nuclear Energy Company. (Defendant's Exhibit 1.) On the affidavit, the plaintiff indicated that he earned gross weekly wages of $1,060, plus an additional $210 per week in overtime salary. (Defendant's Exhibit 1.) At the time of the dissolution, the defendant was the vocational director at the Frank Dean Center in Westerly, Rhode Island, and received gross weekly wages of $728.04. (Defendant's Exhibit 2.)
The court's file contains an unsigned separation agreement which purports to be the parties' agreement with respect to the dissolution of marriage. This document, of which the court also takes judicial notice, was filed with the court on July 21, 1999, but bears the handwritten notation: "Granted Elliot Solomon, J. 7/8/99." The testimony of the parties at this hearing confirms that the proceeding on July 8, 1999 was an uncontested dissolution hearing and that the orders contained in Judge Solomon's judgment were based on the agreement of the parties.[1]
The dissolution judgment provided that the parties would share joint legal custody of the two minor children, whose primary residence was to be with the defendant mother. The plaintiff was ordered to pay child support (in accordance with state guidelines) to the defendant in the total amount of $260 per week. The defendant was awarded the use and ownership of the marital home subject to the existing mortgage and home equity loan. The defendant waived any claim to the plaintiffs 401K and pension accounts, which the plaintiff retained. The plaintiff was also awarded an Oppenheimer Equity Income IRA account.
The defendant testified at hearing that she had spoken with the plaintiff concerning the financial aspects of the dissolution and trusted his representations about his income and assets. She also testified, however, that at some point during the negotiations the plaintiff had threatened to harm himself if the defendant did not lower her financial demands in connection with the dissolution.
The defendant admitted that she had been advised by her lawyer that she could require the defendant to answer written interrogatories under oath or submit to a sworn deposition in order to verify the financial representations which he made to her in connection with the dissolution proceeding. The defendant also testified that she was aware that she could have subpoenaed the plaintiffs financial records to court for the dissolution hearing.
The defendant testified that she ignored her counsel's advice about pursuing such discovery. She claimed that she did not do so because she believed her husband and also because she felt pressured by the CT Page 4683 plaintiffs girlfriend, who had been sending her frequent e-mail messages.
The defendant also admitted during her testimony that she had filed a joint tax return with the plaintiff for the 1998 tax year. That return was not submitted into evidence at hearing. The court infers, however, that the return in question was filed some time in 1999, prior to the date of dissolution on July 8, 1999.
The defendant testified that following the divorce, she began to suspect that the financial affidavit filed by the plaintiff at the dissolution hearing was inaccurate. Her suspicions were initially aroused when the plaintiff purchased a new home in October, 1999, approximately three months after the dissolution was granted.
Evidence at hearing established that the plaintiff purchased a new residence in October, 1999 for the purchase price of $145,000. (Defendant's Exhibit 3.) With closing costs and other adjustments, the plaintiff paid the total cost of $148,535.83 for the new home. (Defendant's Exhibit 3.) of that amount, the plaintiff apparently financed $137,750 and paid $10,785.83 out of his own funds. (Defendant's Exhibit 3.)
The plaintiff testified that he received $7,500 towards the out-of-pocket sum he needed for the purchase of the home from his mother. This testimony was not controverted by the defendant at hearing and the court found it to be credible. The plaintiff also testified that he received a financial settlement in 1999 from his employer to resolve a pay issue. The court also found this testimony of the plaintiff to be credible.
On the mortgage loan application, which the plaintiff submitted in connection with the purchase of his house in October, 1999, he listed his gross monthly base salary as being $4,555.20 per month, plus overtime income of $1,643.26 per month, for a total monthly gross income of $6,198.46. (Defendant's Exhibit 3.) Accordingly, the annual gross income represented by the plaintiff on his October 7, 1999 application was $74,381.52. (Defendant's Exhibit 3.)
The plaintiffs 1999 wage and tax statement (W-2 form) was entered into evidence. (Defendant's Exhibit 4.) It indicated gross wages of $80,268 for the 1999 tax year. (Defendant's Exhibit 4.)
The income figures listed on Defendant's Exhibits 3 and 4 are obviously higher than the salary number stated on the financial affidavit which he filed with the court on July 8, 1999. His affidavit then indicated a total projected annual gross salary of $66,040. (Defendant's Exhibit 1.) CT Page 4684
The plaintiff testified about that disparity at this hearing. He testified that the availability of overtime work as an equipment operator for the nuclear energy company fluctuates. He claimed that during the summer of 1999, there was a two-month period of power outage which required that he work extensive overtime at the plant. The defendant did not controvert this testimony by the plaintiff. The court found that testimony, and the testimony by the plaintiff that he received a financial settlement from his employer to resolve pay issues at the plant, to be credible. Furthermore, Defendant's Exhibits 3 and 4 tended to support the plaintiffs contention that he worked a significant amount of overtime during 1999 as a result of the summertime outage at the power plant.
In her revised motion to reopen and vacate the plaintiffs financial orders, the defendant raised five specific claims of alleged fraud by the plaintiff.
The first allegation was that the. . . . plaintiff failed to disclose accounts which he had with his father as of the date of dissolution."
The defendant contended at hearing that the plaintiff was a joint owner of several bank accounts with his parents and that these accounts were not listed on the plaintiffs July 8th, 1999 financial affidavit. The court has examined Defendant's Exhibit 1 and finds that the plaintiffs affidavit did not list any accounts jointly owned with either of his parents. The defendant also alleged that she received child support from an account which the plaintiff held jointly with his father. The defendant did not subpoena bank records concerning this account to the hearing on the motion to reopen judgment. She also did not produce any documentation concerning the specific amount of child support she allegedly received from that joint account. The defendant admitted during her testimony that she did not pursue production and disclosure of information about the accounts which the plaintiff held jointly with his parents either prior to the date of dissolution, or at the dissolution hearing.
The plaintiff testified credibly at hearing that he was a joint owner and signatory on one account with his mother and on one account with his father. He testified that both of his parents spoke Portuguese. The plaintiff claimed that his name was placed on the accounts in question so he could assist his parents with writing checks to pay their bills. There was evidence at hearing, which the court credits, that plaintiffs father suffered a stroke in August of 1994, and that the plaintiffs father died on August 29, 1998. CT Page 4685
Given the language issue and the father's medical problem, the court finds it credible that the plaintiff was a signatory on those accounts for the purpose of assisting his parents with their finances.
Also, because the plaintiffs father died on October 29, 1998, approximately five months before the dissolution writ was returned to the court, the court finds it likely that the defendant knew of the existence of the accounts in question and of the plaintiffs role in assisting his parents by writing checks from those accounts, prior to the time of dissolution.
The only specific evidence that the plaintiff received a benefit from either account was the defendant's claim that plaintiff made child support payments to her from the joint account with his father. The defendant did not subpoena bank records concerning this account to hearing, and offered no information as to the total amount of child support payments that the plaintiff made to her from this account. Also, it is unclear to the court when those child support payments were made. As noted above, the evidence established that the plaintiffs father died in October 29, 1998. The dissolution writ was returned to the court on March 23, 1999. As the sole surviving signatory to that account after October 29, 1998, the plaintiff would have become the owner of that account when his father died. There was no evidence presented at hearing concerning the amount of money in that account on the date of dissolution.
There was evidence at trial that the plaintiff was also a joint owner on a checking account with his mother which had $25,000 in it. No evidence was introduced at hearing that the plaintiff has taken or received sums from this account prior to the date of dissolution. The plaintiff claimed at hearing that the money in that account belongs to his mother.
The evidence at hearing established that the defendant did not pursue discovery with respect to these accounts prior to dissolution and did not raise any issue concerning these accounts, or the plaintiffs failure to list them on his financial affidavit, at the final dissolution hearing.
Since the plaintiff was a joint owner on both accounts, and presumably the sole owner of the account with his father as of the date of dissolution, both of these accounts should have been listed on the financial affidavit which the plaintiff submitted to the court on the date of dissolution. It is essential in domestic relations proceedings that the parties' financial affidavits provide full and accurate disclosure of all their assets and financial circumstances. When this is not the case, the integrity of the proceeding is jeopardized. CasanovaCT Page 4686v. Casanova, 166 Conn. 304, 345 A.2d 668 (1974); Niles v. Niles,9 Conn. App. 240, 518 A.2d 932 (1986); and Castro v. Castro,31 Conn. App. 761 (1993).
In Billington v. Billington, 220 Conn. 212, 218, 595 A.2d 1377 (1991), our Supreme Court delineated three limitations on the granting of relief from a marital judgment secured by fraud. These include the requirements that (1) there must have been no laches or unreasonable delay by the injured party after the fraud was discovered; (2) there must be clear proof of the perjury or fraud; and (3) there must be a substantial likelihood that the result of a new trial will be different.
The court finds that although these joint accounts were not disclosed on the plaintiffs affidavit, the defendant in this proceeding has failed to prove the second and third prongs required by the Billington
decision. As noted above, the court has found it likely that the defendant knew of the existence of these accounts prior to dissolution. The defendant did not produce evidence at this hearing as to the amount of child support payments which were made from the plaintiff's joint account with his father. Nor did the defendant provide evidence indicating how much money the plaintiff may have received from the account either before or after his father's death.
Similarly, there was no evidence introduced by the defendant at this hearing that the plaintiff received any benefit from his mother's account. In addition, the defendant did not introduce evidence which overcame the plaintiffs contention that he was merely a signatory on his mother's account in order to assist her with her finances.
Given the lack of evidence as referred to above, the court cannot find by a preponderance of the evidence in this matter that the nondisclosure amounts to clear evidence of fraud or perjury or that the result of the trial would have been substantially different if information regarding these joint accounts had been listed on the plaintiffs July 8, 1999 financial affidavit.
The defendant's second claim was that the plaintiff failed to disclose an interest he had in the estate at the time of the dissolution. This allegation relates to the death of the plaintiffs father and the plaintiffs alleged interest in his estate. The plaintiff testified that he received no money or property from his father's estate. The plaintiffs father died in October, 1998, approximately five months before the dissolution action was instituted and approximately nine months before the dissolution judgment entered. Accordingly, the court finds that the defendant was aware of her father-in-law's death prior to the date of dissolution. CT Page 4687
There was evidence at hearing that an estate for the plaintiffs father was opened with the Stonington probate court. No records pertaining to this estate were introduced at this hearing. The court has no evidence or information upon which to base a finding that the plaintiff, in fact, had an interest in his deceased father's estate.
The defendant did not establish in this proceeding that the plaintiff received any interest in his father's estate or received any asset therefrom. Accordingly, this allegation of fraud was not proven by a preponderance of the evidence.
The defendant's third claim was that "plaintiff failed to disclose that he had recently closed three joint bank accounts with the defendant and had failed to provide information concerning same." The following additional facts are germane to this claim. The defendant testified that she and her husband had been the joint owners of three bank accounts. One of the accounts was associated with the plaintiffs landscaping business, one was a vacation club account and one was a Christmas club account.
The defendant admitted during her testimony that she was aware on the date of dissolution that the plaintiff had closed those three accounts. The plaintiff testified that he had closed the accounts three months prior to the date of dissolution. He testified that he used the funds from those accounts to make a home equity loan payment, for child support payments, for attorney's fees, and towards motor vehicle payments.
The defendant did not offer other evidence, such as bank records, with respect to those accounts at this hearing. The defendant did not controvert the plaintiffs testimony concerning when the accounts were closed, or how the funds were utilized by the plaintiff. Based on the foregoing, the court finds by a preponderance of the evidence that the three accounts in question were not in existence on the date of dissolution and that the defendant was aware of this fact. Hence, the plaintiff was not under a legal obligation to list those accounts on his sworn financial affidavit on July 8, 1999. The court notes parenthetically that standing orders prohibiting either party from unilaterally disposing of joint marital assets became effective in this case as to the plaintiff on March 4, 1999. Hence, his appropriation of these accounts might have been a violation of the court's orders and subjected the plaintiff to a finding of contempt. However, the defendant did not raise such a claim either at a pendente lite hearing or at the final dissolution hearing. Based on the testimony of the defendant, it was also proven that the defendant did not pursue discovery about those three accounts through interrogatories or depositions prior to the date of dissolution. Based on all of the foregoing, the defendant has failed CT Page 4688 to prove this allegation of fraud by a preponderance of the evidence.
The defendant's fourth claim was that the plaintiff failed to accurately report the income from his employment on the financial affidavit which he submitted to the court on the date of dissolution. The court has discussed the evidence pertaining to this allegation above. It is true that the income which the plaintiff listed on his financial affidavit on the date of dissolution was less than that which the plaintiff declared on his bank loan application in October, 1999. (Defendant's Exhibit 3.) It is similarly true that the amount of income listed on the plaintiffs July 8, 1999 financial affidavit was less than the amount which he actually received for 1999, as reflected on his W-2 form. (Defendant's Exhibit 4.) However, as noted above, the court found the plaintiffs testimony concerning the fluctuating availability of overtime during the two-month outage at the power plant to be credible. As a result of that outage during the summer of 1999, the plaintiffs income was substantially increased. A financial affidavit may be likened to a snapshot of a person's financial condition at any particular moment in time. Obviously, those conditions can change. The court finds that the plaintiffs annual income for 1999 was more than he indicated in July of 1999 due to the power outage at the plant where he was employed, and because of the financial settlement from his employer. Accordingly, the court finds that the defendant has failed to prove this allegation of fraud by a preponderance of the evidence.
The defendant's fifth and final claim relates to the plaintiffs purchase of his new residence. The defendant's motion states, "In October of 1999, the plaintiff purchased a home in Westerly, Rhode Island, and in the application for same disclosed different information concerning his income and assets."
The court has discussed most of the evidence pertaining to this claim at length above. Specifically, the court credited plaintiffs testimony that $7,500 of the $10,785.83 which he needed as the cash payment for that transaction came through a gift from his mother. There was no other evidence at hearing which established that the defendant acquired that house through other financial means, or that the purchase price was obtained from assets which the plaintiff had fraudulently concealed on the date of dissolution. Also, as noted above, the court cannot conclude that the plaintiffs loan application in October established fraud by the plaintiff in his July financial affidavit. The court finds that the plaintiffs financial circumstances had changed in October as a result of the overtime occasioned by the power outage, and as a result of the financial settlement which he received from his employer. Accordingly, the defendant has failed to prove this allegation of fraud by a preponderance of the evidence. CT Page 4689
Because the defendant has failed to prove any of the allegations of fraudulent behavior by the plaintiff, in accordance with the criteria set forth in Billington v. Billington, supra, the defendant's motion to reopen judgment and vacate the financial orders issued on the date of dissolution is hereby DENIED.
This motion was heard on January 22, 2001. It had been scheduled for a contested hearing on an earlier date in January. On that earlier date, the defendant and her counsel appeared for hearing, but the plaintiff and his counsel were absent. Counsel for the plaintiff later explained that the plaintiff and his counsel missed the scheduled court hearing due to an oversight on the part of plaintiffs counsel. While the court believes that counsel's error was totally inadvertent, the defendant and her counsel were inconvenienced by that error. The defendant was required to take a day off from work and presumably incurred counsel fees as a result of her lawyer's presence at court on the first hearing date. The defendant's daily salary is $146.41 per day. The court orders that counsel for the plaintiff pay to the defendant the sum of $146.41 within fifteen (15) days of the date hereof.
SO ORDERED.
BY THE COURT.
Dyer, J.